UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IVER ROBERT JOHNSON, III, ) ) ) Plaintiff, ) ) v. ) ) DISTRICT OF COLUMBIA, ) ) Defendant. ) ) ) | Civil Case No. 13-2039 |

## MEMORANDUM OPINION

Plaintiff Mr. Iver Robert Johnson, III is an animal rights activist. Although he has never been prosecuted or threatened with prosecution under the District of Columbia's Animal Control Act, he challenges a provision that reads: "No person shall knowingly and falsely deny ownership of any animal." D.C. Code § 8-1808(b). Mr. Johnson sues to obtain declaratory and injunctive relief, arguing the statute violates his First Amendment right to free speech because he is unable to deny ownership of his dog without risking prosecution.

The District of Columbia seeks dismissal, arguing that Mr. Johnson lacks standing and he has failed to state a claim. Def.'s Mot. Dismiss 1, ECF No. 11. Alternatively, it seeks Summary Judgment. Mr. Johnson cross-moves for Summary Judgment. Pl.'s Mot. Summ. J., ECF No. 16. Upon consideration of the entire record and applicable law, the Court GRANTS defendant's motion to dismiss and thus DENIES plaintiff's motion for summary judgment.

I.  BACKGROUND

In around 2004, Mr. Johnson began caring for a beagle, Liam, that was previously a testing animal in a laboratory. Compl. ¶ 15. Mr. Johnson speaks publicly about Liam's experience and his belief that humans should not "own" animals. Compl. ¶ 18. He has given speeches at animal rights events in several cities, explaining his belief that animals are not property. Compl. ¶ 21. Central to Johnson's message is denying that he owns Liam. Compl. ¶ 19.

Mr. Johnson asserts that he desires to give speeches in the District of Columbia about why he opposes treating animals as property, and in such speeches he would like to deny ownership of Liam. Compl. ¶ 22. However, he alleges that he does not do so because he is deterred by D.C. Code § 8-1808(b).

D.C. Code § 8-1808(b) provides "No person shall knowingly and falsely deny ownership of any animal." While the term "ownership" is not defined, an "owner" is defined as "a person in the District of Columbia who purchases or keeps an animal in temporary or permanent custody" with some enumerated exceptions such as veterinary hospitals or pet shops. D.C. Code § 8-1801(5). The penalties for violating this provision range from a maximum of $25 for a first offense to a maximum of $100 for a third or subsequent offense within a 24-month period. D.C. Code § 8-1811.

Mr. Johnson argues that this section of the Animal Control Act has a chilling effect on his right to free speech under the First Amendment, dissuading him from making statements denying ownership of Liam. Compl. ¶ 26. He argues that Section 8-1808(b) is facially unconstitutional, or in the alternative, unconstitutional as applied to his desired conduct. Compl. ¶¶ 28–29.

2

Unfortunately, since this claim was filed, Liam has passed away. ECF No. 8 (Notice of death of dog Liam).

The District of Columbia seeks dismissal, arguing that Mr. Johnson lacks standing, his claim is moot, and that he has failed to state a claim. Def.'s Mot. Dismiss 1. Alternatively, it seeks Summary Judgment. Mr. Johnson cross-moves for Summary Judgment. Pl's Cross-Mot. Summ. J, ECF No. 16. Because this Court finds that Mr. Johnson lacks standing, it grants defendant's Motion to Dismiss on that basis[1] and subsequently denies Mr. Johnson's Motion for Summary Judgment.

## II. LEGAL STANDARD

A challenge to the standing of a party, when raised as a motion to dismiss, proceeds pursuant to Rule 12(b)(1). *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987); *Steffan v. Cheney*, 733 F.Supp. 115, 115 (D.D.C. 1989). The plaintiff generally bears the burden of establishing that the court has jurisdiction. *Tremel v. Bierman & Geesing, L.L.C.*, 251 F. Supp. 2d 40, 43 (D.D.C. 2003). And, "[b]ecause subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (citing 5A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ.2d § 1350).

"For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim,

---

[1] Although it is not necessary to reach the issue, the Court believes that this case is very likely moot as well, as Mr. Johnson's dog is now deceased and he has not informed the Court of any concrete plans to adopt a new dog.

however, a court resolving a motion to dismiss under Rule 12(b)(1) must give the complaint's factual allegations closer scrutiny than required for a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. *Grand Lodge*, 185 F. Supp. 2d at 13–14 (citing 5A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ.2d § 1350). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987); *Haase v. Sessions*, 835 F.2d 902, 907 (D.C. Cir. 1987) ("To the extent the assessment turns on factual evidence, the court may consider all matters developed in the record at the time of its decision."). Instead, to determine whether it has jurisdiction over the case, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992).

Thus, the Court proceeds to assess the evidence with only one question in mind: Does the record support standing pursuant to the constitutional requirements of injury? *Haase v. Sessions*, 835 F.2d 902, 910 (D.C. Cir. 1987).

### III. ANALYSIS

The District of Columbia argues that Mr. Johnson does not have standing because he has not shown that a threatened injury is imminent. Article III restricts a federal court's jurisdiction to certain "Cases" and "Controversies." U.S. Const. art. III, § 2. "This court can have no right to pronounce an abstract opinion upon the constitutionality of a State law. Such law must be brought into actual or threatened operation upon rights properly falling under judicial cognizance, or a remedy is not to be had here." *State of Georgia v. Stanton*, 6 Wall. 50, 75 (1867). "One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue." *Clapper v. Amnesty Int'l. USA*, 133 S. Ct. 1138, 1146 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). This Court considers the issue of Mr.

Johnson's standing keeping in mind the Supreme Court's warning that "[t]he best teaching of this Court's experience admonishes us not to entertain constitutional questions in advance of the strictest necessity." *Parker v. Cnty. of Los Angeles*, 338 U.S. 327, 333 (1949).

To show standing, plaintiffs must "allege such a personal stake in the outcome of the controversy as to warrant [their] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [their] behalf." *Warth*, 422 U.S. at 498–99 (quotations omitted). The Supreme Court has held that "[a] plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement," *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); his fear of prosecution must not be "imaginary or wholly speculative," *id.* at 302.

"Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972). While "[s]ubjective 'chill' alone will not suffice to confer standing on a litigant bringing a pre-enforcement facial challenge to a statute allegedly infringing on the freedom of speech," "imminent threats commonly suffice." *A.N.S.W.E.R. v. District of Columbia*, 589 F.3d 433, 435 (D.C. Cir. 2009) (quotations omitted). *See also Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014) ("[W]e have permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent.").

Mr. Johnson argues that where protected speech is arguably chilled, a more lenient standard is applied. Indeed, the D.C. Circuit has "implied" that "standing to challenge laws burdening expressive rights requires only 'a credible statement by the plaintiff of intent to commit violative acts and a conventional background expectation that the government will enforce the law.'" *Id.* (quoting *Seegars v. Gonzales*, 396 F.3d 1248 (D.C. Cir. 2005)). Even

5

assuming that is true,[2] this "conventional background expectation" of enforcement may be overcome where the law is moribund or of purely "historical curiosity." *Navegar, Inc. v. United States*, 103 F.3d 994, 1000 (D.C. Cir. 1997). *See also Poe v. Ullman*, 367 U.S. 497 (1961) (finding no standing to challenge an 80-year-old law with a long history of non-enforcement); *N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 16 (1st Cir. 1996) (noting presumption is overcome where the state demonstrates the statute is moribund or will not be enforced); *N.C. Right to Life, Inc. v Bartlett*, 168 F.3d 705, 710 (4th Cir. 1995) (where a non-moribund statute restricts expressive activity "by the class to which the plaintiff belongs *and presents such a credible threat*, a case or controversy thus exists *in the absence of compelling evidence to the contrary*" (emphasis added)). Where there is no expectation of enforcement, there is unlikely to be a "credible threat" of prosecution. *Cf. United Farm Workers*, 442 U.S. at 299; *Skaggs v. Carle*, 110 F.3d 831, 836–37 (D.C. Cir. 1997); *Chamber of Commerce v. FEC*, 69 F.3d 600, 603 (D.C. Cir. 1995). When plaintiffs "do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible," they do not allege a dispute susceptible to resolution by a federal court. *Younger v. Harris*, 401 U.S. 37, 40 (1971).

The difference between an abstract question and a "case or controversy" is one of degree and is not discernible by any precise test. *See Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). "[W]hether a threat of prosecution adequate to satisfy the requirements of

---

[2] Contrarily, the Supreme Court recently emphasized that an injury must be "certainly impending" to support standing. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013). In *Clapper*, plaintiffs argued that a provision of the Foreign Intelligence Surveillance Act allowing broad surveillance was unconstitutional. The Court granted defendant's motion for summary judgment, finding plaintiffs' allegedly chilled speech insufficient to support standing because the injury was not "certainly impending." Mr. Johnson argues that *Clapper* did not involve a pre-enforcement challenge to a speech-restrictive law, and thus is not controlling here. However, the First Circuit has applied *Clapper* to such a case. *See Blum v. Holder*, 744 F.3d 790, 796 (1st Cir. 2014). This Court need not decide whether *Clapper*'s more stringent requirements apply, because plaintiff lacks a legally cognizable injury capable of supporting standing under either standard.

justiciability is present in any particular preenforcement challenge is a factual and case-specific determination." *Navegar*, 103 F.3d at 999. "Federal courts look to a variety of factors to determine whether the plaintiff's decision to forego certain activity is truly motivated by a well-founded fear that engaging in the activity will lead to prosecution under the challenged statute." *Id*. As such, this Court must consider the "full panoply of circumstances relevant to the plaintiff's claim of an imminent threat of prosecution." *Id*. Such factors may include the history of enforcement of the challenged statute to like facts, any threats of enforcement, and a government's disavowal of any intention to prosecute on the basis of the Government's own interpretation of the statute and its rejection of the plaintiff's interpretation as unreasonable. *See Blum v. Holder*, 744 F.3d 790, 798 (1st Cir. 2014); *Hill v. City of Houston, Tex.*, 789 F.2d 1103, 1107 (5th Cir. 1986) *aff'd*, 482 U.S. 451 (1987). The D.C. Circuit has noted that courts often find the absence of a specific threat fatal. *Seegars v. Gonzales*, 396 F.3d 1248, 1252 (D.C. Cir. 2005).

Several Supreme Court cases to consider these factors illustrate the circumstances under which plaintiffs may bring a pre-enforcement challenge consistent with Article III.

In *Steffel v. Thompson*, police officers threatened to arrest petitioner and his companion for distributing handbills protesting the Vietnam War. After Petitioner left to avoid arrest, his companion was arrested and charged with criminal trespass. When Petitioner subsequently challenged the statute's constitutionality, the Supreme Court determined that petitioner alleged a credible threat of enforcement: He had been warned to stop handbilling and threatened with prosecution if he disobeyed; he stated his desire to continue handbilling (an activity he claimed was constitutionally protected); and his companion's prosecution showed that his "concern with arrest" was not "'chimerical.'" 415 U.S. 452, 459 (1974).

In *Virginia v. American Booksellers Ass'n, Inc.*, the court permitted booksellers to seek preenforcement review of a law making it a crime to "knowingly display for commercial purpose" material that is "harmful to juveniles" as defined by the statute. 484 U.S. 383, 386 (1988). There, the pre-enforcement nature of the suit was not troubling because the State "ha[d] not suggested that the newly enacted law [would] not be enforced" and the Court saw no reason to assume otherwise. *Id.* at 393.

In *Holder v. Humanitarian Law Project*, the Court considered a pre-enforcement challenge to a law that criminalized "knowingly provid[ing] material support or resources to a foreign terrorist organization" by plaintiffs who claimed they would provide such support in the future. 561 U.S. 1, 8 (2010). The Court found standing was supported by the fact that the government had charged 150 people with violating the law and declined to disavow prosecution if the plaintiffs resumed their support of the designated organizations. *Id.* at 16.

Considering the Supreme Court's guidance as well as all relevant factors in this case, this Court finds that Mr. Johnson's fear of prosecution is not "objectively reasonable." *N.H. Right to Life Political Action Comm*, 99 F.3d at 14. There is in fact little or no support for Mr. Johnson's belief that he would be penalized under the Code at issue. Because prosecution is not remotely likely, this is not a dispute susceptible to resolution by this Court.

Mr. Johnson argues that the Court must presume the government will enforce this law. ECF No. 15, at 11–12. As noted above, this presumption of enforcement may be overcome by a showing that the law is moribund or will not be enforced. Here, the statute has gone unenforced for nearly four decades and there is no evidence that the government has ever enforced the statute on these facts. In fact, it seems likely that the government has never enforced this statute *at all*. M. Kimberly Brown, an employee in the Office of the Attorney General, has "searched

the electronic case management database as well as the code tables supporting the database" and was "not able to identify any cases in which [the office] prosecuted the criminal enforcement of D.C. Code § 8-1808(b)." ECF No. 11-2, Decl. of M. Kimberly Brown. Additionally, Vito R. DelVento, the supervisor of enforcement of § 8-1808(b) within the D.C. Department of Health, states "I have searched all available DC Animal Division databases, hard copy files, and have spoken with DC Animal Division colleagues, and I am not aware of any enforcement actions related to D.C. Code § 8-1808(b)." ECF No. 11-3, Decl. of Vito R. DelVento. After nearly forty years of nonenforcement, there is little reason to think the statute will be enforced in the future.

Mr. Johnson points to a case in which the Supreme Court entertained a challenge to a statute that had been unenforced for forty years as evidence that this statute is not "moribund." *See Epperson v. State of Ark.*, 393 U.S. 97, 110 (1968). However, the Court did not reach the issue of justiciability in that case. *See San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996). Indeed, a concurring judge noted he was "by no means sure that this case presents a genuinely justiciable case or controversy" but that the Court decided the merits because "the State's languid interest in the case ha[d] not prompted it to keep this Court informed concerning facts that might easily justify dismissal of this alleged lawsuit as moot or as lacking the qualities of a genuine case or controversy." *Epperson*, 393 U.S. at 110 (J. Black, concurring).

In addition to a total lack of previous enforcement, the government has never threatened Mr. Johnson with prosecution. Furthermore, the government has disavowed any intention to prosecute. *Cf. Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) (holding that plaintiffs face a credible threat of prosecution where there is a history of prosecution under the challenged law and "[t]he Government has not argued . . . that plaintiffs will not be prosecuted if they do

what they say they wish to do"); *Babbitt*, 442 U.S. at 302 ("Moreover, the State has not disavowed any intention of invoking the criminal penalty provision against [entities] that [violate the statute]."). The government does not intend to prosecute Mr. Johnson's desired speech because it does not believe such conduct is prohibited by the statute. *See* ECF No. 11-3, Decl. of Vito R. DelVento (stating the District's position that § 8-1808(b) relates not to speech but to holding individuals accountable for the vaccination and licensing of an animal, and that it would be "antithetical to the purpose of [the provision] to enforce it as Plaintiff suggests"). There is no reason to think that enforcers will prosecute Mr. Johnson despite their belief that his conduct is not prohibited.

The presumption of enforcement is overcome in this case by evidence of a nearly forty-year period of nonenforcement, an absence of threatened enforcement, and the government's stated intent not to prosecute conduct like Mr. Johnson's because of its belief that the statute does not proscribe it. The cases Mr. Johnson cites are inapposite: In virtually every case he cites finding standing, there were specific threats of prosecution and/or evidence of past prosecution. *See, e.g., Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (2014) (finding a "substantial threat of future enforcement" where the government had not disavowed enforcement and there was a past history of enforcement); *Chamber of Commerce v. FEC*, 69 F.3d 600 (D.C. Cir. 1995) (finding standing where Commission was divided on question of whether law should be enforced, and furthermore, any person could challenge its decision not to enforce).

In sum, Mr. Johnson "present[s] no concrete evidence to substantiate [his] fears, but instead rest[s] on mere conjecture about possible governmental actions." *Clapper*, 133 S. Ct. at 1154. Mr. Johnson's fear of prosecution under § 8-1808(b) is based on speculation that the Government will enforce the provision pursuant to interpretations it has never adopted and in

fact explicitly rejects. Such hypothetical fears cannot form the basis for standing under Article III. If Mr. Johnson does choose to engage in conduct that results in prosecution under § 8-1808(b), he may raise his constitutional defense in that context.

IV. CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss is GRANTED, and plaintiff's motion for summary judgment is DISMISSED. A separate order consistent with this Opinion shall issue on this 17th day of October, 2014.

Signed by Royce C. Lamberth, United States District Judge, on October 17, 2014.